UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-21678-BLOOM/Otazo-Reyes

VPR BRANDS, LP,

      Plaintiff,

v.

HQDTECH USA LLC, AND
NEPA 2 WHOLESALE, LLC,

      Defendants.
_____/

## OMNIBUS ORDER ON MOTIONS TO DISMISS AND FOR LEAVE TO AMEND

**THIS CAUSE** is before the Court upon Defendants Nepa 2 Wholesale, LLC ("Nepa") and HQDTECH USA LLC's ("HQDTECH") (together, "Defendants") Motions to Dismiss Plaintiff's Second Amended Complaint, ECF Nos. [46], [47] ("Motions to Dismiss"). In response, Plaintiff VPR Brands, LP ("Plaintiff" or "VPR") filed a Motion for Leave to Amend, ECF No. [54] ("Motion to Amend"), to which Defendants each filed a Reply, ECF Nos. [56], [57]. The Defendant have also filed their Joint Motion to Reschedule Mediation, ECF No. [58]. The Court has carefully considered the Motions to Dismiss and Motion to Amend, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons that follow, the Motions to Dismiss are denied, the Motion to Amend is denied, and the Joint Motion to Reschedule Mediation is denied as moot.

### I.    BACKGROUND

This case arises as a result of alleged patent infringement by Defendants of United States Patent Number 8,205,622 entitled "Electronic Cigarette" ("'622 Patent"). ECF No. [45-1]. On May 3, 2021, VPR filed its Complaint asserting two claims of infringement of the '622 Patent against

HQDTECH. *See* ECF No. [1] ("Complaint"). On May 26, HQDTECH filed its Answer and Affirmative Defenses to Plaintiff's Complaint. ECF No. [10]. Thereafter, Plaintiff filed a First Amended Complaint, ECF No. [11], asserting infringement claims against HQDTECH and newly added Defendant Nepa. HQDTECH thereafter filed an Answer and Affirmative Defenses. *See* ECF No. [23].

In response to the First Amended Complaint, Nepa filed a Motion for a More Definite Statement and to Dismiss Count II of the Amended Complaint, ECF No. [32], arguing that Plaintiff failed to adequately identify which of Defendants' products are allegedly infringing the '622 Patent, or how Nepa induced any of its customers to infringe the '622 Patent. Instead of responding to the substance of Nepa's arguments, Plaintiff requested, ECF No. [41], and was granted, ECF No. [44], leave to file a Second Amended Complaint, *see* ECF No. [45].

In the Motions to Dismiss, Defendants argue that the Second Amended Complaint should be dismissed because it fails to properly identify which products allegedly infringe the '622 Patent, fails to specify how the products infringe the asserted claim, fails to properly allege direct infringement against the products, and fails to allege the requisite knowledge or intent. *See* ECF Nos. [46], [47].[1] Again, rather than respond to the substance of Defendants' arguments, Plaintiff filed its Motion to Amend, attaching its proposed Third Amended Complaint, ECF No. [54-1]. Plaintiff asserts that the Third Amended Complaint "resolves all the issue[s] raised in Defendants' motions to dismiss." ECF No. [54] at 2, ¶ 10. Defendants dispute Plaintiff's assertion, and request that the Court deny leave to amend, and dismiss Plaintiff's Second Amended Complaint with

---

[1] In the alternative, the Motions to Dismiss request that the Court require a more definite statement with respect to which products are allegedly infringing, the specific factual bases for the direct and indirect infringement claims, and the factual basis of the willful infringement claim.

prejudice. The Court also notes that Plaintiff's request to further amend is untimely based upon Court's Scheduling Order, ECF No. [13].

## II. LEGAL STANDARD

### A. Dismissal for failure to state a claim

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration All.*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Off.*, 449 F.3d 1342, 1352 (11th Cir. 2006). "[T]he court may dismiss a complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (citations omitted).

### B. Amendment to the pleadings

Generally, Rule 15 of the Federal Rules of Civil Procedure governs amendment to pleadings. Apart from initial amendments permissible as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* A plaintiff should be afforded the opportunity to test its claim on the merits as long as the underlying facts or circumstances may properly warrant relief. *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, "[a] district court need not . . . allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). Ultimately, "the grant or denial of an opportunity to amend is within the discretion of the District Court[.]" *Foman*, 371 U.S. at 182. *See also Espey v. Wainwright*, 734 F.2d 748, 750 (11th Cir. 1984) ("This policy of Rule 15(a) in liberally permitting amendments to facilitate determination of claims on the merits circumscribes the exercise of the trial court's discretion; thus, '[u]nless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial.'") (citation omitted).

Under the Federal Rules of Civil Procedure, district courts are required to enter a scheduling order that limits the time to amend the pleadings. *See* Fed. R. Civ. P. 16(b)(3)(A). Scheduling orders may be modified only "for good cause and with the judge's consent." *See id.* at

R. 16(b)(4). "This good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (quoting Fed. R. Civ. P. 16 advisory committee's note) (quotations omitted). Accordingly, when a motion to amend is filed after a scheduling order deadline, Rule 16 is the proper guide for determining whether a party's delay may be excused. *Id.* at 1418 n.2; *see also Smith v. Sch. Bd. of Orange Cnty.*, 487 F.3d 1361, 1366-67 (11th Cir. 2007) (holding that "where a party files an untimely motion to amend, [we] must first determine whether the party complied with Rule 16(b)'s good cause requirement," before considering whether "justice so requires" allowing amendment). If the party seeking relief "was not diligent, the [good cause] inquiry should end." *Sosa*, 133 F.3d at 1418 (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)).

### III. DISCUSSION

#### A. Motions to Dismiss

At the outset, the Court notes that under the Local Rules, "each party opposing a motion shall file and serve an opposing memorandum of law no later than fourteen (14) days after service of the motion[, and f]ailure to do so may be deemed sufficient cause for granting the motion by default." S.D. L.R. 7.1(c)(1). Moreover, the Eleventh Circuit has "repeatedly [ ]held that plaintiffs cannot amend their complaint through a response to a motion to dismiss." *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x. 657, 665 (11th Cir. 2015) (citing *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009)); *see also Tsavaris v. Pfizer, Inc.*, 2016 WL 375008, at *3 (S.D. Fla. Feb. 1, 2016) ("A plaintiff, though, cannot amend the complaint in a response to a motion to dismiss, for a court's review on dismissal is limited to the four corners of the complaint.") (citing *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). Plaintiff's failure to respond

in substance to the arguments raised in the Motions to Dismiss, and instead attempting to procedurally short circuit the Court's review here, is patently improper. Plaintiff's failure would be sufficient cause for the Court to grant the Motions to Dismiss by default. However, the Court does not believe that outcome to be warranted here. Thus, the Court will first resolve the Motions to Dismiss with respect to the Second Amended Complaint before considering Plaintiff's request for leave to amend.

Defendants argue that the Second Amended Complaint should be dismissed because it fails to properly identify which products allegedly infringe the '622 Patent, fails to specify how the products infringe the asserted claim, fails to properly allege direct infringement against even the identified products, and fails to allege the requisite knowledge or intent. The Court considers each argument in turn.

### i. Failure to properly identify infringing products

Defendants contend that Plaintiff's allegations regarding the allegedly infringing products are insufficient and improper because Plaintiff identifies six (6) products, but then continues stating that the infringing products "include but are not limited to the products listed," and "shown on the exhibits attached hereto." ECF No. [45] ¶ 18. The exhibits, ECF Nos. [45-3], [45-4] (together, "Exhibits"), depict HQDTECH products and Nepa products respectively. Defendants argue that because the Exhibits contain many products that are not electronic cigarettes, and Plaintiff does not specifically identify which electronic cigarettes are at issue, Plaintiff is improperly pleading open-ended allegations, making it impossible to formulate a response.

Upon review, the Court does not agree with Defendants that Plaintiff must specifically identify every potentially infringing product. The *Twombly/Iqbal* standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence." *Twombly*, 550

U.S. at 556. The insertion of "include but are not limited to" indicates that Plaintiff's list pertaining to the infringing products is specific and exemplary, but not necessarily exhaustive. In this case and at this stage of proceedings, Plaintiff need not allege more. Defendants are therefore not entitled to dismissal of Plaintiff's claims on this basis.

In addition, to the extent that Defendants request a more definite statement, the Court also finds such a request not to be warranted in this case. Under Rule 12(e) of the Federal Rules of Civil Procedure, "a party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). In patent infringement cases, courts have found Rule 12(e) relief appropriate where the complaint fails to identify any allegedly infringing product or at least set forth a limiting parameter. *See, e.g., In re Papst Licensing GmbH Patent Litig.*, No. 99-3118, 2001 WL 179926, at *2 (E.D. La. Feb. 22, 2001) (requiring plaintiff to amend complaint to identify specifically which of defendant's products allegedly infringed plaintiff's patents); *Agilent Techs., Inc. v. Micromuse, Inc.*, No. 04 Civ. 3090(RWS), 2004 WL 2346152, at *5-6 (S.D.N.Y. Oct. 19, 2004) (granting motion for more definite statement where complaint merely stated the infringement arose from alleged fact that defendant "makes, sells, or offers products for sale . . . that infringe Agilent's patents").

In support, Defendants cite two out-of-circuit cases, one of which relies upon the other. *See Static Control Components, Inc. v. Future Graphics, LLC*, No. 07CV00007, 2008 WL 160827, at *1 (M.D.N.C. Jan. 15, 2008); *Bay Indus., Inc. v. Tru-Arx Mfg., LLC*, No. 06-C-1010, 2006 WL 3469599, at *2 (E.D. Wis. Nov. 29, 2006). In *Bay Industries*, the court granted the defendant's request for a more definite statement where the plaintiff's complaint alleged that the defendant "sells extruded aluminum cladding for entry door frames and garage door frames of various sizes

and configurations," and that "[c]ertain of these products are at issue in this case," but otherwise did not specifically identify any of the infringing products. 2006 WL 3469599, at *1. The court observed that "by failing to identify any allegedly infringing product or to set forth a limiting parameter, plaintiff in effect is requiring defendant to compare its approximately 40 products to at least 20 claims of the [] patent in order to formulate a response." *Id*. at *2. Similarly, in *Static Control Components*, the plaintiff's complaint identified universal chips as the infringing products, specifically listing twelve by part number. 2008 WL 160827, at *1-2. The court noted that, while the complaint identified some chips by item number and attempted to use "universal chips" as a limiting parameter, the complaint as framed would still require the defendant to compare each of its chips that could be considered "universal chips," and determine whether they may violate any of the claims of the subject patent. *Id*. at *2.

Here, however, the Second Amended Complaint makes it clear that while Plaintiff does not intend to limit its infringement allegations to the six products specifically identified in paragraph 18, Plaintiff's identification of "electronic cigarette" products is a sufficient limiting parameter. Indeed, in the Second Amended Complaint, Plaintiff alleges the specific components of the "electronic cigarette" disclosed in the '622 Patent, *see* ECF No. [45] ¶¶ 12-14, and lists the features of Defendants' allegedly infringing products, *see id*. ¶¶ 20-21. Thus, to the extent that the Exhibits include products, which Defendants recognize to be cigars, cigarillos, USB charging cords, or other items that are clearly not electronic cigarettes, *see* ECF No. [46] at 7-8, it is reasonable to infer that Plaintiff's claims of infringement do not include such products. Thus, the Court does not agree that a more definite statement is warranted.

    **ii. Failure to specify how the products infringe the asserted claim**

HQDTECH argues in addition that the Second Amended Complaint fails to specify how the accused products infringe the asserted claim from the '622 Patent. In pertinent part, Plaintiff alleges that Defendants have infringed at least claim 13 of the '622 Patent, as described in an infringement chart attached as an exhibit to the Second Amended Complaint. *See* ECF No. [45-2] ("Claim Chart"). HQDTECH contends that because the accused products are limited to those specifically named in paragraph 18 of the Second Amended Complaint and the products listed in the Exhibits, and the product shown in the Claim Chart is not included in the SAC or Exhibits, Plaintiff's infringement claims should be dismissed.

Upon review, the Court disagrees. HQDTECH relies upon *Thermolife International, LLC v. Vitamin Shoppe, Inc.*, No. 0:16-cv-60693-UU, 2016 WL 6678525, at *2 (S.D. Fla. June 8, 2015), for support. However, the Court does not find that *Thermolife* supports HQDTECH's position because the facts are distinguishable. In *Thermolife*, the plaintiff alleged infringement with respect to three claims of the patent in suit – claims 1, 2, and 3. 2016 WL 6678525, at *2. However, the claim chart attached to the complaint in *Thermolife* only detailed why claim 1 of the patent in suit was infringed. *Id*. As a result, the court in *Thermolife* determined that the complaint did not give the defendants fair notice, or any notice at all, with respect to the infringement claims based on claims 2 or 3 of the patent. *Id*. Therefore, the court dismissed the infringement claims related to claims 2 and 3 of the patent, but to the extent that the claim chart attached to the complaint detailed how claim 1 of the patent in suit was infringed, the court determined that dismissal of the complaint's infringement count based upon claim 1 of the patent was not appropriate. *Id.*

Here, HQDTECH contends that, because the *product* in the Claim Chart has not been specifically identified, the Second Amended Complaint fails to state a claim. However, the Court has already rejected Defendants' argument that Plaintiff must specifically identify every infringing

product at the pleading stage. In *Thermolife*, the court's decision turned on the identification of the *claims* being infringed, not the products. Notably, although Defendants challenge the sufficiency of the allegations with respect to infringement, HQDTECH does not argue that the Claim Chart fails to detail how claim 13 of the '622 Patent was infringed, as pleaded in the Second Amended Complaint. *See* ECF No. [45], ¶ 32. As such, HQDTECH's argument is not well-taken.

### iii. Failure to properly allege direct infringement

Defendants argue next that the Second Amended Complaint fails to properly allege direct infringement because Plaintiff's allegations simply recite the claim language without factual support, and therefore fail to satisfy the *Twombly*/*Iqbal* pleading standard.

Infringement occurs when an infringer, without permission, "makes, uses, offers to sell or sells any patented invention." 35 U.S.C. § 271(a). "To succeed on a claim for direct infringement, the allegedly infringing product must practice all elements of a patent claim." *Sunrise Techs., Inc. v. Cimcon Lighting, Inc.*, 219 F. Supp. 3d 260, 263 (D. Mass. 2016) (citing *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995)). "[A]n allegation of direct patent infringement is insufficient under *Twombly* and *Iqbal* if it 'simply recit[es] some of the elements of a representative claim and then describ[es] generally how an accused product operates, without specifically tying the operation to any asserted claim or addressing all of the claim requirements.'" *Glob. Tech LED, LLC v. Every Watt Matters, LLC*, No. 15-CV-61933, 2016 WL 6682015, at *2 (S.D. Fla. May 19, 2016) (first alteration added) (quoting *Atlas IP LLC v. Pac. Gas & Elec. Co.*, No. 15-CV-05469-EDL, 2016 WL 1719545, at *2 (N.D. Cal. Mar. 9, 2016)). "[I]n applying *Twombly* and *Iqbal* . . . , [Plaintiffs] must allege that [Defendants'] product practices all the elements of at least one of the claims of the subject patent." *Sunrise Techs., Inc.*, 219 F. Supp. 3d

at 263 (alterations added) (citing *TeleSign Corp. v. Twilio, Inc.*, No. CV 16-2106, 2016 WL 4703873, at *3-4 (C.D. Cal. Aug. 3, 2016)).

In the Second Amended Complaint, Plaintiff alleges that Defendants' electronic cigarette products practice all the steps of at least one of claims of the '622 Patent, and specifically, claim 13 of the '622 Patent. ECF No. [45] ¶¶ 15, 32. Claim 13 of the '622 Patent states:

> An electronic cigarette comprising a tubular electronic inhaler and a tubular electronic atomizer, wherein the electronic inhaler includes an electric power source that provides an electric current to the electronic atomizer, the electronic cigarette further comprising an electric airflow sensor that is used to turn on and off the electric power source by way of detecting an airflow and sending a signal to a Single Chip Micyoco, wherein the Single Chip Micyoco receives the signal from the electric airflow sensor, instructs the electric power source to send an electric current to the electronic atomizer, and a time period and a magnitude of the electric current.

ECF No. [45-1] at 13. In addition, the Claim Chart provides labeled photographs of an allegedly infringing product, the "HQD," alongside the claim language. *See* ECF No. [45-2].

Defendants contend first that it is unclear what product Plaintiff has charted in the Claim Chart, since none of the products specifically identified in the Second Amended Complaint are called the "HQD." However, the products identified in paragraph 18 of the Second Amended Complaint are each designated with HQD product names, and therefore, construing the allegations in the light most favorable to Plaintiff, the Court may reasonably infer that the "HQD" product referred to in the Claim Chart demonstrates how Defendants' electronic cigarette HQD products infringe the '622 Patent.

In addition, Defendants contend that although the Claim Chart points to purported structures in the image of the HQD product and labels them with language from claim 13, there is otherwise no explanation of how these structures satisfy the claim requirements. As a specific example, Defendants highlight the use of the terms "Single Chip Micyoco," which they argue is

11

not a term of art nor defined in the patent. Defendants contend that Plaintiff has not explained why the chip in each infringing product is a "Micyoco." The pleading standards do not require Plaintiff to provide such detailed explanations here.

Indeed, although "Single Chip Micyoco" is not specifically defined in the '622 Patent, the Abstract section provides the following descriptions of its function:

> a Single Chip Micyoco [] controls the atomization process. The sensor's role is to collect an airflow signal that triggers the Single Chip Micyoco, which in turn instructs the electronic cigarette to supply electric power to the inhaler and atomizer connected through an electric connector. . . . The Single Chip Micyoco driven by a software program controls the electronic cigarette in an on/off manner according to the signal detected by the electric sensor on the airflow and completes a cycle of atomization, which converts a solution of a liquid form inside the liquid container to a gas form.

ECF No. [45-1] at 2. In addition, the Summary of the Invention section of the '622 Patent explains further that,

> [w]hen the user puffs on the electronic cigarette through the air-puffing hole on the first end of the atomizer, the electronic sensor detects an airflow and converts it to a signal, which then wakes up the single chip micyoco to record the signal. The single chip micyoco guided by its embedded software instructions may turn on the electric power source to supply an electricity current with a predefined time length. This electric current preferably flows through the electric heat wire inside the atomizer tube, which then heats up the heat equalizer with absorbed liquid from the liquid-container. The heated equalizer converts the liquid into a form of vapor mist, which is finally drawn into the mo[u]th of the user. This completes an entire cycle of vaporizing process from which the user gets satisfaction of "smoking."

*Id*. at 10. The Claim Chart in turn points to the structure in the allegedly infringing product, which functions as the single chip micyoco. *See* ECF No. [45-2] at 3. At this stage in this case, this is sufficient.[2]

---

[2] Defendants provide one last example of why the Claim Chart is insufficient – because it contains a reference to "2.2.5" in the section depicting a waveform recorded in response to the airflow drawn through the inhaler. *See* ECF No. [45-2] at 4. While the Court agrees that it is not clear to what "2.2.5" refers, the Court disagrees that this isolated reference is fatal to Plaintiff's claim. Defendants have not pointed to any authority that would support dismissal of Plaintiff's claim on this basis alone.

The Court finds the cases relied upon by Defendants to be distinguishable. In *Blue Water Innovations, LLC v. Fettig*, the court dismissed the counts for patent infringement because the plaintiff's complaint failed to name a single claim in the subject patents. No. 18-60671-Civ-Scola, 2019 WL 1904589, *2 (S.D. Fla. Mar. 8, 2019). Here, as the Court has already noted, the Second Amended Complaint specifically names claim 13 of the '622 Patent. Similarly, in *Global Tech LED, LLC v. Every Watt Matters, LLC*, although the plaintiff named several specific patent claims allegedly infringed, the complaint alleged only that defendants infringed through "making, using, selling, or offering for sale, one or more of the Accused Products." No.15-cv-61933-BLOOM/Valle, 2016 WL 6682015, at *3 (S.D. Fla. May 19, 2016). Notably, the plaintiff in *Global Tech* did not include an infringement chart, illustrating how any of the Accused Products infringed on any of the claims of the patent in suit. In contrast, the Claim Chart adequately illustrates how the HQD products allegedly infringe on claim 13 of the '622 Patent.

### iv. Failure to adequately plead knowledge or intent

Finally, Defendants argue that the induced infringement claim and request for a finding of willful infringement should be dismissed because there are no facts pleaded to support that Defendants had either knowledge of, or a specific intent to infringe, the '622 Patent. The Court considers each argument in turn.

A claim of induced infringement "requires a showing that the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed specific intent to encourage another's infringement of the patent." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009); *see also Mee Indus. v. Dow Chem. Co.,* 608 F.3d 1202, 1215 (11th Cir.2010) (to prove inducement of infringement, a patentee must demonstrate that the accused infringer had the intent to cause the acts which constitute the infringement). Induced infringement liability also "requires

knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765 (2011). The "mere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven." *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) (quoting *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1363 (Fed. Cir. 2003)). "To prove inducement of infringement, the patentee must show that the accused inducer took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement." *Info-Hold, Inc. v. Muzak LLC*, 783 F.3d 1365, 1372 (Fed. Cir. 2015) (quotations and citation omitted).[3]

With respect to willfulness, once infringement has been established, the court "may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. Enhanced damages are "designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior," commonly described as "willful, wanton, malicious, bad faith, deliberate, consciously wrongful, flagrant, or . . . characteristic of a pirate." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 136 S. Ct. 1923, 1932 (2016). In order to willfully infringe a patent, the infringer must know of the patent. *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 860 (Fed. Cir. 2010) ("Infringement is willful when the infringer was aware of the asserted patent, but nonetheless 'acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.'")

Upon review, Defendants appear to conflate the requirements for pleading induced infringement and willfulness with the showing required to prove such claims. Indeed, the Federal Rules of Civil Procedure state that "[m]alice, intent, knowledge, and other conditions of a person's

---

[3] Defendants misquote *Info-Hold* as stating, "To properly plead infringement . . . ," but, the Court assumes that the misquotation is not deliberate. *See* ECF No. [46] at 12.

mind may be alleged generally." Fed. R. Civ. P. 9(b). In the Second Amended Complaint, Plaintiff alleges that "[a]t all times during which H[QD]TECH and NEPA imported, made, used, offered to sell and sold electronic cigarette products that infringe one or more claims of the '622 Patent, defendants had knowledge of the '622 Patent." ECF No. [45] ¶ 24. Plaintiff also alleges that "H[QD]TECH and NEPA have indirectly infringed at least one claim of [the '622 Patent] by requesting and encouraging and inducing customers to purchase and use the products listed above and shown on the exhibits attached hereto and other products substantially similar in violation of 35 U.S.C. § 271(b)." *Id.* ¶ 36. While the Court recognizes that Plaintiff may not ultimately be able to prove its claim of induced infringement or that Defendants' infringement was willful, the allegations in the Second Amended Complaint with respect to both are nevertheless sufficient at this stage.

### B. Motion to Amend

Determining whether Plaintiff is entitled to amend the Second Amended Complaint raises two overarching issues. The first is whether "good cause" exists pursuant to Rule 16(b) for amending more than a month after the deadline set forth in the Scheduling Order, ECF No. [13], to amend the pleadings had expired. Assuming that Plaintiff can show good cause, the second is whether there is a "substantial reason" to deny leave to amend under Rule 15(a), such as if amendment would be futile, unduly prejudicial to Defendants, or where there has been undue delay or dilatory motive.

#### i. Plaintiff fails to show good cause

Plaintiff acknowledges that the request to amend is not timely pursuant to the Court's Scheduling Order, ECF No. [13], which set the deadline for amended pleadings on August 16,

2021. *See* ECF No. [54] at 2, ¶ 12. Nevertheless, Plaintiff argues that pursuant to Rule 15, leave to amend in this case should be granted.

When a motion for leave to amend a pleading is filed after the deadline set in a court's scheduling order, the court employs a two-step analysis. *Sosa*, 133 F.3d at 1419. First, the movant must demonstrate good cause under Rule 16(b) of the Federal Rules of Civil Procedure, which exists when the deadline could not "be met despite the diligence of the party seeking the extension." *Id.* at 1418 (quoting Fed. R. Civ. P. 16 advisory committee note). Courts consider three factors in assessing diligence: (1) whether the movant failed to ascertain facts prior to filing the pleading or failed to acquire information during the discovery period, (2) whether the information supporting the proposed amendment was available to the movant, and (3) whether the movant delayed in requesting leave to amend even after acquiring the information. *See id.* at 1419. If the movant demonstrates good cause, the court proceeds to determine whether an amendment to the pleadings is proper under Rule 15(a) of the Federal Rules of Civil Procedure. *Id.*

Other than to assert that the Motions to Dismiss were filed after the amendment deadline, Plaintiff otherwise does not address Rule 16 or the good cause requirement for granting leave to amend after the expiration of a scheduling order deadline. Indeed, Plaintiff has not argued that it recently acquired information necessary to the amendment, nor is there any indication that the information was not otherwise available to Plaintiff. As such, the Court cannot conclude that Plaintiff was diligent here. In fact, Plaintiff at no point has sought an extension of the amendment deadline. As a result, Plaintiff has not satisfied Rule 16's good cause requirement here. The Court therefore does not consider whether there is a substantial reason to deny leave to amend.

IV. **CONCLUSION**

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that:

1. The Motions to Dismiss, **ECF Nos. [46], [47]**, are **DENIED**;

**2.** Plaintiff's Motion for Leave to Amend, **ECF No. [54]**, is **DENIED**;

**3**. The Defendants shall file Answers to the Second Amended Complaint by **November 8, 2021;** and

**4.** As the foregoing Motions have been resolved, the Defendants' Joint Motion to Reschedule Mediation, **ECF No. [58]**, is **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 28, 2021.

_____
**BETH BLOOM
UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record